STATE HIGHWAY COMMISSION of Missouri, Respondent,

v.

James I. SPAINHOWER, State Treasurer of Missouri, Appellant.

No. 57767.

Supreme Court of Missouri, Division No. 1.

Dec. 10, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 14, 1974.

Robert L. Hyder, Chief Counsel, Jefferson City, for respondent.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

HIGGINS, Commissioner.

Appeal by State Treasurer from adverse decision in action for declaratory judgment involving construction of the Constitution of Missouri.

The State Highway Commission of Missouri, under the 1945 Constitution of Missouri and subsequent laws, supervises and expends the state road fund, which was created by the Constitution and consists of all state revenue derived from highway users including all state license fees and taxes on motor vehicles, trailers, and motor vehicle fuels.

The State Treasurer of Missouri under the Constitution is the custodian of all state funds, including the constitutionally created state road fund.

At the September 21–22, 1967, meeting of the State Highway Commission, the Commission determined that the state road fund contained sums which were not required for expenditure within the ensuing twelve months and were available for investment. The Commission directed its chief counsel "to write the State Treasurer to invest fifty million dollars from the State Road Fund on interest for a minimum period of six months, with the further provision that if the Treasurer can get an increased rate by investment for a twelve-month period, he be so instructed, with all interest therefrom to be paid into the State Road Fund."

The Commission's directive to its chief counsel was executed by letter of September 28, 1967, to the then State Treasurer, M. E. Morris. The letter also told the treasurer: "Should you disagree * * * with the Commission's request that the interest be paid into the State Road Fund, it is asked that you so advise * * * in

order that a declaratory judgment may be sought and any subsequent necessary steps be taken to place the interest where * * * it properly belongs. Regardless of your position * * * it would seem * * * to be to the interest of the State that the investment be made in any event with the interest to be allocated at the end of the period should you be prevented from returning it to the State Road Fund."

The Treasurer, by letter of October 4, 1967, advised the Commission that the Treasurer could not comply with the Commission's request to return interest from investment of the state road fund to the state road fund, but was making an investment in time deposit-open accounts in Missouri banks with interest received to be returned to the general revenue fund. The investment so made of the state road fund covered the period October 4, 1967, to October 4, 1968, and netted interest in excess of $31,000 which the Treasurer, per his expressed intention, credited to the general revenue fund.

Plaintiff's position in the trial court was that Section 30.240, RSMo 1969, V.A.M.S. relied upon by the State Treasurer in refusing to credit the interest in question to the state road fund, does not relate to the state road fund; and, if construed to affect the state road fund, it was unconstitutional and void, being in conflict with Section 15, Article IV, Missouri Constitution, V.A.M.S., with respect to interest and income from particular funds. Plaintiff also asserted the statute to be unconstitutional, being in conflict with Sections 29, 30(a) and 30(b), Article IV, Missouri Constitution, V.A.M.S. with respect to limitation upon use of the state road fund.

Plaintiff, by separate count, asked for an accounting of the interest in question in the event of a favorable declaratory judgment.

The trial court found "that all interest and income from the investment of the State Road Fund must be credited to such fund and not diverted to General Reve-

nue," and, in so holding, found it unnecessary to hold Section 30.240 unconstitutional.

The trial court ordered, adjudged and decreed "that interest and income from the investment of the State Road Fund must be credited, when received, to such fund and may not be expended for any other purposes than those prescribed in Section 30(b) of Article IV of the Constitution and in Section 226.220."

The court designated this a final and appealable judgment, "but in the absence of an appeal or after determination of such appeal, the parties proceed to the accounting requested in Count II * * * to determine the amounts which should be properly credited to the State Road Fund and which have heretofore been deposited by the defendants in other funds."

Appellant contends: (I) Article IV, Section 15, Missouri Constitution, does not require that proceeds from investment of the state road fund be credited to that fund; and (II) Article IV, Section 30(b), does not require the Treasurer to credit the interest from investment of the state road fund to the state road fund.

Respondent's contention (I) is the converse of appellant's Point I; and by (II), contends that Article IV, Section 30(b), requires that interest from investment of the state road fund be expended on the state highway system.

The issue is whether interest from investment of the state road fund must be credited by the State Treasurer to the state road fund to be used for highway purposes as contended by the Highway Commission and as found by the trial court, or whether such interest is to be credited to the general revenue fund as contended by the State Treasurer.

Pertinent parts of the applicable constitutional and statutory provisions follow:

Article IV, Section 15: " * * * All revenue collected and moneys received by

the state from any source whatsoever shall go promptly into the state treasury, and all interest, income and returns therefrom shall belong to the state. Immediately on receipt thereof the state treasurer shall deposit all moneys in the state treasury to the credit of the state * * * and he shall hold them for the benefit of the respective funds to which they belong and disburse them as provided by law."

Article IV, Section 30(b): "For the purpose of constructing and maintaining an adequate system of connected state highways all state revenue derived from highway users as an incident to their use or right to use the highways of the state, including all state license fees and taxes upon motor vehicles, trailers and motor vehicle fuels, * * * shall be credited to a special fund and stand appropriated without legislative action for the following purposes, and no other. [All the enumerated purposes are road purposes.]"

Section 226.220, RSMo 1969, V.A.M.S.: "There is hereby created and set up the state road fund which shall receive all moneys and credits from [enumerated sources]. * * * No payments or transfers shall ever be made from the state road fund except for an expenditure made (1) Under the supervision and direction of the state highway commission; and (2) For a purpose set out in subparagraphs (1), (2), (3), (4), or (5) of section 30, article IV, of the constitution [now Section 30(b)]."

Section 30.240: "The state treasurer shall hold all state moneys, all deposits thereof, time as well as demand, and all obligations of the United States government in which such moneys are placed for the benefit of the respective funds to which they belong and disburse the same as authorized by law. All yield, interest, income, increment, or gain received from the time deposit of state moneys or their investment in obligations of the United States government shall be credited by the state treasurer to the general revenue."

Section 30.280: "The state treasurer shall keep separate accounts of the funds of the state showing the name of the fund, the moneys belonging to it, deposits, * * * and all yield, interest, income, increment or gain received on the moneys."

Section 33.080: "All fees, funds and moneys from whatsoever source * * * shall * * * be placed in the state treasury to the credit of the particular purpose or fund for which collected, and shall be subject to appropriation * * * for the particular purpose or fund for which collected * * *."

With respect to Article IV, Section 15, appellant asserts that it simply directs the Treasurer to deposit all moneys received to the credit of the funds to which they belong, and that interest and income shall belong to the state. Appellant argues that in the absence of a requirement in Section 15 that income or interest from the investment of state moneys in a special fund be credited to that fund, the General Assembly has the power to provide for the disposition of such increments, State ex rel. Jones v. Atterbury, 300 S.W.2d 806, 810 [2] (Mo. banc 1957); that the legislature has made such a direction by Section 30.240, and, if there is doubt as to the meaning of Section 15, the construction placed on it by the legislature by Section 30.240 is persuasive, In re V——, 306 S.W.2d 461, 465 [5] (Mo. banc 1957).

With respect to Article IV, Section 30(b), appellant, utilizing the same argument, asserts that it does not support a determination that income and interest from investment of the state road fund should be credited to that fund.

Respondent's argument is that the quoted provisions of Article IV, Section 15, contemplate that interest and income from special funds be credited to such funds; that when Section 15 is read with Article IV, Section 30(b), it shows the intention that the state road fund occupy a peculiar position in the state treasury for state

highway purposes, and that neither it nor income derived from it can be diverted to general state purposes. Respondent argues that the first sentence of Section 30.240 simply requires the Treasurer to hold all state moneys for the benefit of the funds to which they belong, and this implies, or is a "provision for the deposit of particular funds and to retain the integrity of interest thereon [in the event of investment] in the fund on which interest accrued"; that the second sentence permits interest from state moneys not credited to a particular fund to be credited to general revenue and, if any other meaning is ascribed to the second sentence, the first has no effective meaning; that unless this interpretation be given to Section 30.240, it is otherwise unconstitutional in application to the state road fund.

■■■ This problem has not been considered in Missouri. It is clear, however, that the people of Missouri, by Article IV, Section 30(b), and the General Assembly, by its enactment of Section 226.220, supra, in interpretation of Article IV, Section 30(b), intended that no money be diverted from the state road fund and no other use be permitted of the fund except for the enumerated state highway purposes. Pohl v. State Highway Commission, 431 S.W.2d 99, 104–105, 106 (Mo. banc 1968). With the state road fund so restricted against transfer or use for any other purpose, interest or income from such fund must be credited to that fund under Article IV, Section 15, and held against withdrawal or use for any purpose other than state highway purposes, including diversion to the general revenue fund.

■■■ Section 30.240, supra, need not be found in conflict with the intention expressed in the cited constitutional provision. The first sentence of Section 30.240 requires the State Treasurer to hold all state moneys and all deposits and government obligations in which they are placed for the benefit of the respective funds to which they belong and disburse them as

provided by law. This interprets Article IV, Section 15 of the Constitution, V.A.M.S. and requires the Treasurer, when investing the state road fund, to hold the investment for the benefit of the state road fund and, in expending it, to do so only as supervised and directed by the State Highway Commission. The term "general revenue" in Section 30.240 does not appear to have been defined by statute; however, Section 33.080, supra, is indexed as the section applicable to "general revenue fund," and it requires all moneys received from any source to be placed in the state treasury to the credit of the particular purpose or fund for which collected. This determination is consistent with the principle that while construction of constitutional provisions should be neither liberal nor broad, in arriving at the intent and purpose the construction should be broad and liberal rather than technical, and the constitutional provision should receive a broader and more liberal construction than statutes. Rathjen v. Reorganized School District R–II, 365 Mo. 518, 284 S.W.2d 516, 524 [14] (banc 1955); and also with the principle that if a statute may be so construed as to avoid conflict with the Constitution, this will be done. State ex rel. State Highway Commission v. Paul, 368 S.W.2d 419, 422 [2] (Mo. banc 1963); Lawson v. Baker, 220 S.W. 260, 272–273 [9] (Tex.Civ.App.1920).

This problem has been considered and the same result reached in the State of Oregon where a taxpayer petitioned for writ of mandamus to compel the state treasurer to return to the state's general fund certain money accumulated as interest on several special funds of the state, one of which was the state highway fund. The treasurer had credited such interest to the particular funds involved. The highway funds involved were moneys received from various motor vehicle and fuel taxes. Article IX, Section 3, Constitution of Oregon, requires that "the proceeds" from any such tax "be used exclusively" for the construction and maintenance, etc., "of public highways, roads and streets within the state of

Oregon." Sections 293.760, 295.080, and, particularly, 293.140, Oregon Revised Statutes, provided that interest received on deposits of state funds shall accrue to and become a part of the general fund.

In holding that the writ failed with respect to the "constitutional" highway fund, it was reasoned: "The highway money involved here is derived from gasoline taxes and other vehicle fees and licenses. Prior to 1942 the use of this money was governed by statute. In 1941 the Legislature proposed and * * * the people adopted the amendment to Article IX, Section 3 of the Constitution which restricted the use of this form of revenue to highway purposes. It is apparent that the intent of the people when they adopted the amendment was to guarantee that none of the 'proceeds' of the taxes and fees listed in the amendment would be diverted to any other purpose.

"In Lawson v. Baker (Tex.Civ.App.) 1920, 220 S.W. 260, the Texas Court held that interest became a part of a similar highway fund in Texas and that the constitutional limitation in the Texas Constitution as to the use of the fund prohibited the legislature from diverting the interest away from the fund. * * * At 143 A. L.R. beginning at page 1341 is an annotation on the liability of municipalities for interest earned on special funds held by the treasurer of the municipality. The annotators have collected cases relating to interest on the funds of a school district or drainage district, for example, held by a county treasurer. These cases are significant in that they generally hold that interest must follow a special fund and be used for the benefit of the fund or for the purpose for which the fund was created. See particularly Pomona City School Dist. v. Payne, 1935, 9 Cal.App.2d 510, 50 P.2d 822. * * * in most of these cases the courts are examining statutes not constitutions. The cases are, however, pertinent * * * because a local officer may no more disregard a state statute than a legislature can ignore the constitution of the state.

"An examination of all of the authority * * * is convincing that the legislature cannot divert interest from these funds. * * *

"It is recognized that the people's approval of the amendment to Article IX Section 3 provides no actual expression of a will and intent that interest that may be earned by the accumulated revenues controlled by the amendment should accrue to the highway fund. There is a strong inference, however, that the clear intent of the people to compel the specific revenues to be used for one purpose implies that it would include all of the interest that would accrue during the State Treasurer's holding of the revenues for their eventual use." State v. Straub, 240 Or. 272, 400 P.2d 229, 232 (banc 1965). See also 81 C.J.S. States § 155a p. 1192: "Interest earned by a deposit of special funds is an increment accruing thereto, and not to the general funds of the state"; and Petition of Board of Public Buildings, 363 S.W.2d 598 (Mo. banc 1963), dealing with revenue bonds of the State Board of Public Buildings issued for the purpose of constructing a state office building in Kansas City, holding that revenues accruing as rentals paid by various occupying agencies were a separate trust fund to be held and used solely for repayment of bondholders and were, therefore, not "state moneys" except as contrasted with "private funds" and that it was proper to place such funds in custody of the state treasurer but not to be held by the treasurer as part of the state treasury funds.

Appellant would distinguish State v. Straub, supra, asserting that the Oregon court determined that "proceeds" necessarily included interest earned on highway funds; that no such term appears in Article IV, Section 30(b), Missouri Constitution, V.A.M.S. and that "revenue" in the Missouri Constitution connotes something different from "proceeds." The difference, if any, in the two terms is that "revenue" is a better term in this context.

"Revenue" means "That which \* \* \* comes back, from an investment; the annual or periodical rents, profits, interest, or issues, of any species of property, real or personal; income. \* \* \* An item of income; a source of revenue. \* \* \* public income of whatever kind." "Proceeds" means "That which results, proceeds, or accrues from some possession or transaction." Webster's New International Dictionary, Second Edition.

The judgment is affirmed and the cause remanded for the accounting prayed in Count II and determination of the amounts due the state road fund heretofore credited by the State Treasurer to general revenue.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.